[No. 34598.   Department Two.   July 17, 1958.]

CALVARY PENTECOSTAL CHURCH, *Appellant*, v. ELSIE JOHNSON *et al.*,
*Respondents.*[1]

*O'Leary, Meyer & O'Leary*, for appellant.

*Nathan G. Richardson*, for respondents.

PER CURIAM.—Appellant, Calvary Pentecostal Church, a nonprofit corporation, instituted an action to recover the possession of real property in Clallam county against the respondents, pastors of the Calvary Pentecostal Church of Port Angeles. Pursuant to leave, the Calvary Pentecostal Church of Port Angeles, Eric Berglund, Laura Reeves, Harliss Gardner, Irja Korpi, Margaret Beckett and Alex Dodds filed a complaint in intervention alleging the existence of the Calvary Pentecostal Church of Port Angeles, that the interveners were members thereof, that the action was brought on their behalf and on behalf of all other members of the church, and prayed that title to the property be quieted in the interveners.

The court found for the interveners and entered a judgment dismissing the plaintiff's complaint and quieting title in the interveners. Plaintiff appeals. Judge Max Church heard the case below and disposed of the entire controversy in a careful and painstaking opinion. Nothing can be added to it, and, omitting the title and immaterial matters, it is adopted as the opinion of this court:

" 'This matter came on regularly for trial, upon the issues as finally made up, on the 26th day of September, 1957, all parties being represented by counsel.

" 'At the close of the taking of testimony and after the matter was argued to the Court, Plaintiff's counsel stated that the only relief it seeks is the ejectment of the two named Defendants from the real property described in the pleadings. The Court questioned Mr. O'Leary very closely on this assertion and it was clearly reiterated.

" '. . . There is no testimony to show that either of these two "pastors" has seized the property; claim any interest in or dominion over it or that the activities of either are other than ecclesiastical ministrations.

" 'The only question remaining to be resolved is "Where is the title to the premises lodged or where should it be lodged?" . . .

" 'Whoever or whatever the ostensible Plaintiff may be, this is in essence and fact an effort by the witnesses Margaret Copley and her husband to obtain the title to the property for herself and some rather nebulous self-perpetrating group operating under the broad mantle of religion.

" 'It seems that some of those then and now comprising the group of Intervenors rented the property in its then incomplete condition from William Brennand, et ux.; that they afterward and in November, 1940, contracted as "Calvary Pentecostal Church" *a corporation* to purchase the premises from the Brennands for $500.00. . . . The instrument was signed by the purchasers as "Calvary Pentecostal Church" (No

[1] Reported in 328 P. (2d) 162.

designation as corporation) by four members: one Michalscheck, as pastor; and Clark, Jacobs, and Reeves as trustees. None of these persons was at any time an officer, "trustee", or so far as shown a member of the Copleys corporation or organization (Michalscheck did testify he thought the signers themselves were a corporation).

" 'In June, 1942, . . . . the witness Berglund, who seems to have been a member of the Intervenors group from the beginning until now, advised "the Calvary Executives," whoever they may have been, that the building was enlarged—what indebtedness the group had incurred —and importuned the "Executives" for a loan from the Calvary Pentecostal Church, Inc., of $200.00. . . .

" 'By this time and on 20 April, 1942, Brennands had conveyed title to Calvary Pentecostal Church, a corporation, by warranty deed, i.e., prior to the request for a loan. This instrument, however or whenever it came into Copleys' possession was not filed for record until 17 October, 1956. (The contract of purchase was never filed, and how the Copleys got possession of it is not explained.)

" 'An instrument denominated warranty deed, . . . was executed by the relict of William Brennand, covering the premises, dated 22 June, 1948, and running to Calvary Pentecostal Church, *Inc., Seattle, Washington*. This instrument was filed for record 25 June, 1948. There is no other indication that any Calvary Pentecostal Church flourished in Seattle or that the Plaintiff ever did business there.

" 'To go back to 6 September, 1938, the Intervenors *received a* "Church Fellowship Certificate" . . . signed by one of the Copleys which guarantees to Calvary Pentecostal Church, Port Angeles, Washington, *the right of local government* (except *by special written agreement* with the Executive Presbytery). No such agreement appears.

" 'Much is made of a paper said to have been signed by some of the Intervenors and members and bearing a questionable notarial acknowledgment, 28 September, 1942. Some of the signatories categorically deny they signed it at all. . . . There is grave doubt in the Court's mind that those who deny signing actually did so.

" 'In any event, it can scarcely be construed, to put the best face upon it, as an instrument of conveyance. It was manufactured by someone other than any of the signatories. The Court is convinced that its import, if it is genuine, is in the ecclesiastical realm and that it is not a muniment of title.

" 'The most significant aspect of this controversy, to the Court's mind, is the record of transactions between the Copleys and the local flock.

" 'The Intervenors sought and obtained a loan presumably on the strength of the Copleys' commitment "to lend help" set out in the Church Fellowship Certificate. . . .

" 'All this money was paid back in small amounts and over a long time and, on May (No day stated), 1946, Margaret Copley, who seems to be the real party in interest, as far as the Plaintiff is concerned, gave a receipt in full for these advances . . . to that date and a subsequent and final receipt for any balance ($50.00) due October (No day), 1950. . . .

" 'The only paper title upon which the Plaintiff can prevail is (one) the description of the grantee . . . which is a confirmation deed obtained for curative purpose and passing no title, and *(two)* the words "a corporation" in Brennands deed of 23 November, 1940. These words the Court treats merely as adjectives, having no legal import. The paper was acknowledged and presumably prepared by one whom the Court knows to be a lay abstracter. . . .

" 'Whether this controversy involved a resulting trust arising where the title is taken in the name of one whereas all the purchase price is supplied by another or the remedy of reforming a deed to make it speak the truth is of little moment.

" 'The Court is convinced that the Intervenors together with their

fellows paid for the property; at all times justifiably thought it was theirs and that in law and fact it was and is theirs—that originally title became vested in them and remains in them and the Plaintiff has no right, title, or interest in the premises.

"'BY THE COURT this 8th day of October, 1957.'"

The judgment is affirmed.